IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

AKIN WILLIAMS                                                                                          PLAINTIFF

   v.                                          Civil No. 4:10-cv-04144

OFFICER JIMMY SMITH;
LT. STEVEN GLOVER; NURSE
JOAN McLEAN; and
CAPTAIN JOHNNY GODBOLT                                                                 DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Akin Williams (hereinafter Williams), pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Williams is currently an inmate of the Arkansas Department of Correction (ADC), Varner Unit, in Grady, Arkansas. The events that are the subject of this lawsuit occurred between September and December of 2010 while Williams was incarcerated in the Hempstead County Detention Center (HCDC) in Hope, Arkansas.

The Defendants have filed a motion for summary judgment (ECF No. 24). At Williams's request, a questionnaire (ECF No. 29) was prepared to assist him in responding to the motion. The Williams filed a timely response (ECF No. 30 ). The motion is now ready for decision.

### 1. Background

On September 11, 2010, the inmates flooded the pod Williams was assigned to. *Williams's*

*Response* at ¶ 3(A) (hereinafter *Resp.*).  Williams' cell had water in it.  *Id.*

While he was standing in the door of his cell, Williams maintains Officer Jimmy Smith (hereinafer Smith) came up to Williams' cell, stuck his hand in the door trap, and sprayed him.  *Resp.* at ¶ 3(C).  Williams indicates the spray got all over him including his face and eyes.  *Id.* at ¶¶ 3(H)-(J).  Prior to administering the pepper spray, Williams maintains Smith gave him no verbal warnings or orders.  *Id.* at ¶¶ 3(E)-(F).  Williams maintains he did not refuse to obey any orders and never left his cell.  *Id.* at ¶¶ 3(B)-(D).  After he was sprayed, Williams states Smith came into the cell and pushed him into the wall.  *Id.* at ¶ 3(D).

At this point, Williams states he ran from his cell into the day-room in an attempt to get away from Smith.  *Resp.* at ¶ 4(A).  According to Williams, Smith then pushed the spray into Williams' neck causing him injuries.  *Id.* at ¶¶ 4(A)-(B).

Smith's version of these events differs significantly from William's version.  According to Smith, he went to the pod and asked Williams to return to his cell.  *Defts' Ex.* A at ¶ 5.  Williams refused and "continued to run his mouth at me." *Id.* at ¶ 6.  At this point, Smith states he warned Williams that he would have no choice but to use pepper spray if he did not comply with orders and return to his cell.  *Id.* at ¶ 7.  After giving three verbal warnings, Smith states Williams was still refusing to return to his cell so Smith administered a short burst of pepper spray.  *Id.* at ¶ 8.  Smith indicates the pepper spray canister was almost empty and that Williams did not get hit in the face. *Id.* at ¶ 9.

Smith also denies pushing Williams against the wall in his cell or putting a can of pepper spray against his neck in the day-room.  *Defts' Ex.* 1 at ¶ 10.  In fact, Smith states he never placed a hand on Williams during this incident.  *Id.*

Williams requested medical care on September 13th, and stated that he was in severe pain as a result of back and neck injuries he acquired when he was pushed against the wall in his cell. *Resp.* at ¶ 5.  Nurse McLean treated Williams on September 18th.  *Id.* at ¶ 6.  She noted that he was complaining of back pain but was vague in describing the location of the pain.  *Id.*  She authorized him to have an extra mat if one was available and prescribed Percogesic.  *Id.*  Williams received the prescribed medication.  *Id.* at ¶ 7.

While Nurse McLean ordered x-rays on his back and neck, Williams maintains that when he went to the emergency room the doctor said Nurse McLean had waited too long for x-rays and an MRI was needed.  *Resp.* at ¶ 8.  When Williams asked McLean to order an MRI, she refused.  *Id.* at ¶ 9.

On September 25th, Williams submitted another sick call request for neck and back pain and complained the medication he was on was not working.  *Resp.* at ¶ 11.  Williams stated he was in constant pain.  *Id.*

Williams was seen on October 2nd.  *Resp.* at ¶ 12.  He complained of headache, being unable to sleep, and wanting something stronger for the pain.  *Id.*  Williams was diagnosed with headache, insomnia, and lumbar strain.  *Id.* at ¶ 13.  He was prescribed Meloxicam, for the control of pain and swelling, and Depakote, for headaches.  *Id.*  He received the prescribed medication.  *Id.* at ¶ 14.

On October 5th, Williams submitted a medical request.  *Resp.* at ¶ 15.  He stated he needed x-rays and that the medication was not working.  *Id.*  In response, Williams was told the medication had not had time to work and that it would take two weeks before he could determine if it would help.  *Id.* at ¶ 16.

On October 14th, Williams submitted another medical request.  *Resp*. at ¶ 17.  He stated he

-3-

still had back and neck pain and headaches. *Id.* He stated he had been on the medication for two weeks and his condition remained the same or was a little worse. *Id.* Williams was seen by Nurse McLean and offered over the counter medication. *Id.* at ¶ 19. Nurse McLean noted that Williams refused the medication. *Defts' Ex.* F. Williams, however, states he didn't refuse it but instead was just letting Nurse McLean know the medication was not working. *Id.*

Nurse McLean continued Williams on his medication and ordered x-rays of his head and lumbar spine. *Defts' Ex.* F. Williams again asserts he had been told by the emergency room doctor that an MRI was needed. *Resp.* at ¶ 19.

Williams had been experiencing back and neck pain since before the September 11th incident. *Resp.* at ¶ 20. In fact, as early as February 19, 2010, Williams had put in a sick call request because of pain in his neck. *Defts' Ex.* B; *Resp.* at ¶ 21.

Williams was asked to explain in detail how he believed Nurse McLean exhibited deliberate indifference to his serious medial needs. He replied: "Nurse McLean she could not find anything wrong with my back and she still refused to get me medical treatment." *Resp.* at ¶ 22.

With respect to Lieutenant Glover, Williams does not contend he used excessive force against the Williams. *Resp.* at ¶ 23. However, Williams contends Glover is liable for Smith's actions. *Id.* If an officer puts his hand on an inmate, Williams maintains he is liable for it. *Id.*

Glover was not involved in making any decisions about Williams' medical care. *Resp.* at ¶ 25. However, Williams maintains he is liable for Nurse McLean's actions. *Id.* Moreover, Williams notes he filed a complaint about the assault. *Id.* According to Williams, Glover refused to respond to the complaint.

With respect to Captain Godbolt, Williams states he was not involved in the use of excessive

force or in deciding what medical care Williams should receive. *Resp.* at ¶¶ 25-26. Since Godbolt is over the jail, Williams believes he is liable for the actions of Smith and Nurse McLean. *Id.*

Williams was asked whether be believed a policy, practice, or custom of Hempstead County was a moving factor in the violation of his constitutional rights. Williams answered "yes" and then explained:

> My constitutional rights was violat[ed] the day Officer Smith came in to C-pod and stuck his hand in to my door trap and sprayed me with pepper spray then he came in my cell and put his hand on me by pushing me into the wall that how my constitutional rights was violat[ed] but look at the camera.

*Resp.* at ¶ 27.

Since his transfer to the ADC, Williams indicates he has been receiving treatment for his back and neck problems. *Resp.* at ¶ 28.

### 2. Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 3. Arguments of the Parties

First, with respect to any official capacity claims, Defendants argue no showing can be made that a policy or custom of Hempstead County was the moving force behind any alleged constitutional violations. Second, with respect to the excessive force claim, while there are issues of fact existing between Williams' version of the events and Smith's version of the event, they maintain the claim

fails because Williams suffered no more than *de minimis* injuries. Third, with respect to the denial of medical claim, they note that all Defendants except Nurse McLean were non-medical officials and cannot be held liable so long as they were justified in believing the inmate was receiving adequate medical care. They also argue that Williams cannot establish he was suffering from an objectively serious medical need following the September 11th incident. Finally, they argue there is no evidence of deliberate indifference on McLean's part.

With respect to the excessive force claim, Williams maintains he did not refuse to obey any orders and did nothing to provoke the use of the pepper spray or the use of physical force. He also contends he had neck and back pain and headaches following the incident. With respect to the denial of medical care claim, Williams maintains he should have been sent to a doctor and an MRI should have been done.

### 4. Discussion

"To state a claim under [§ 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the allege conduct deprived the plaintiff of a constitutionally protected federal right." *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011). In this case, Williams maintains his constitutional rights were violated in two ways: (1) the excessive use of force; and (2) denial of medical care.

#### (A). Excessive Use of Force

The summary judgment record does not indicate whether Williams was a pretrial detainee or a convicted prisoner at the time of the alleged use of excessive force. In view of this, I will apply the objective reasonableness standard applicable to pretrial detainees. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996). In general, the use of force is "justified when there was a concern for the safety of the institution, the jailers, and the inmates." *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993).

Courts, including the Eighth Circuit, have concluded that "a limited application of [non-lethal chemical agent] to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)(discussing cases from a number of jurisdictions holding the use of chemical agents did not

constitute cruel and unusual punishment if reasonably necessary to maintain security and order or subdue a recalcitrant prisoner). The Eighth Circuit also noted that when "[u]sed in such manner and purpose, its application should 'rarely be a proper basis for judicial oversight.'" *Jones*, 207 F.3d at 496.

In *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006), the court considered factors including whether the actions of the officers were defensive in nature or motivated by anger; whether the actions were necessary to maintain order or were excessive reactions by frustrated officers; and whether the amount of force used was commensurate with the situation. *Id.* The court noted additional material issues included whether or not the Williams failed to comply with orders given by officers in the cell, whether the Williams was actively resisting them, whether verbal orders or the application of less force would have been sufficient, whether or not a warning issued before the application of the pepper spray, and whether the Williams suffered real injuries. *Id.*

Clearly, there are genuine issues of material fact in this case. Williams' and Smith's versions of the event differ dramatically. At the summary judgment stage, I am not free to adopt one parties' version of the events over another. Furthermore, even is Williams' injuries to his back and neck are characterized as *de minimis,* this does not foreclose an excessive force case. The proper focus of the inquiry is on the amount of force used and a *de minimis* use of force is insufficient to support a claim. *See e.g., Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011)("[I]t is logically possible to prove an excessive use of *force* that caused only a minor *injury,* and a rule that forecloses a constitutional claim in that circumstance focuses on the wrong question").

With respect to the remaining Defendants, there is no basis for them to be liable on the

excessive force claim. "[A] supervisor is only liable for [his] . . . own misconduct and is not accountable for the misdeeds of [his] agents under a theory such as respondeat superior or supervisor liability." *Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011)(citations omitted).  A supervisor may incur liability if he was personally involved in the alleged violation or if he knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it.  *Ottoman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003)(citations omitted).  Nothing suggests the remaining Defendants were involved in, aware of, or approved the use of the pepper spray.

Similarly, there is no basis on which Hempstead County can be held liable.  The County may not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 691 (1978).  There is no suggestion of the existence of a custom, policy, or practice of Hempstead County.

### B. Medical Care

"Under the Eighth Amendment's proscription against cruel and unusual punishments, prison officials must provide medical care to inmates." *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008)(internal quotation marks and citation omitted).  "A prison's medical staff violates the Eighth Amendment if they commit acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." *Meuir v. Green County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007)(internal quotation marks and citation omitted).   To establish a prima facie case, Williams must demonstrate that:  (1) he suffered from an objectively serious medical need; and (2) Defendants actually knew of, but deliberately disregarded, that need. *Id.*

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

The decision of what diagnostic tests are necessary is one ordinarily left to the judgment of medical personnel. *See e.g., Estelle v. Gamble*, 429 U.S. 97, 107 (1976)(where medical personnel saw inmate 17 times in 3 months and treated back strain with bed rest, muscle relaxants, and pain relievers, their failure to x-ray inmate's back or implement other diagnostic techniques or treatment was not deliberate indifference). In this case, Williams was seen, given various medications including pain relievers, and Nurse McLean indicated x-rays should be ordered. Williams, however, refused the x-rays saying an MRI was needed. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)(prison officials do not violate Eighth Amendment when, in exercise of their professional judgment, they refuse to implement inmate's requested course of treatment).

Furthermore, "[a] prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden*, 663 F.3d at 342 (internal quotation marks and citation omitted). Williams has presented no such evidence.

The remaining Defendants were not involved in determining what medical treatment Williams should receive. Prison officials who have no medical training and made no medical decisions are not liable for medical staff's decisions. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th

Cir. 1995). Williams has made no showing that Hempstead County had a policy or custom of denying inmates medical care or diagnostic tests.

### 5. Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (ECF No. 24) be granted in part and denied in part. Specifically, I recommend the motion be granted with respect to the denial of medical care claims and all claims against Lt. Steven Glover, Nurse Joan McLean, and Captain Johnny Godbolt. I recommend the motion be denied on the excessive force claim against Officer Jimmy Smith.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January 2012.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE